# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

RICKY DALE RAWLINS,            )
                               )
       Petitioner,         )
                               )
v.                             )    No. CIV 07-359-FHS
                               )
DAVID C. MILLER,               )
                               )
       Respondent.         )

## OPINION AND ORDER

Before this court is petitioner's Petition for a Writ of Habeas Corpus. Petitioner, an inmate currently incarcerated at Lawton Correctional Facility in Lawton, Oklahoma, attacks his conviction in Love County District Court Case Number CF-2003-78 for Shooting with Intent to Kill. He sets forth the following grounds for relief:

> I. Reversible error occurred when the trial court failed to instruct the jury according to law.[1]
>
> II. The evidence was insufficient to sustain Mr. Rawlins' convictions therefore his convictions violated the due process clause of the 14th Amendment of the United States Constitution and Article 2, Section 7 of the Oklahoma Constitution.
>
> III. Mr. Rawlins received ineffective assistance of trial counsel in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

---

[1]This proposition was abandoned by plaintiff. It was not addressed in the brief filed by plaintiff and it was not argued at the hearing held in this matter. As a result, this court finds that this proposition has been abandoned.

IV. Prosecutor misconduct in closing arguments denied Rawlins his right to a fair trial in violation of the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and the Oklahoma Constitution.

V. The trial court erred in admitting hearsay statements and the admission of the hearsay statements were improper and denied Petitioner his rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article 2, Section 20 of the Oklahoma Constitution.

VI. The trial court erred in instructing the jury regarding the court's authority to suspend or defer a sentence or impose a sentence less than the jury's assessment of sentence.

VII. The trial errors complained of herein cumulatively denied Petitioner's right to a fair trial under the United States and Oklahoma Constitution and therefore, his convictions and sentences must be reversed.

Respondent concedes petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review and has submitted the following records to the court for consideration in this matter:

A. Petitioner's brief in his direct appeal.

B. The State's brief in petitioner's direct appeal.

C. Summary Opinion affirming in part and reversing and remanding in part petitioner's Judgment and Sentence. <u>Rawlins v. State</u>, No. F-2004-866 (Okla. Crim. App. Aug. 17, 2006).

D. The three volume trial transcript.

E. The original record.

## I. Sufficiency Evidence

In this habeas action, petitioner alleges his conviction for shooting with intent to kill was not supported by sufficient

evidence. Respondent asserts the Oklahoma Court of Criminal Appeals considered this issue and found no merit to this claim in petitioner's direct appeal. Under the revised federal habeas corpus statutes, habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The court finds the facts as follows. On April 16, 2003, part-time process server Stacey Ayres was driven by her husband, Mike Ayres, to a residence to serve summons on petitioner's brother, Kenneth Rawlins. The Rawlins family property was close to the Ayres' farm, and Mike Ayres knew the petitioner, Ricky Rawlins, Jr., and his brother Kenneth. (Tr. I 178-179). On this initial attempt to serve papers, Stacey was met in front of the house by Ricky Rawlins, Sr., the father of Ricky Jr., and Kenneth. (Tr. I 131). The elder Rawlins told Stacey that Kenneth was not home and he did not know when he would return. Stacey told the father she would try again in a few days. (Tr. I 131-33).

Three days later, Stacey Ayres returned to serve Kenneth. She was again driven there by Mike, and this time Stacey's 12 year old son, Jacob, was also in the vehicle. (Tr. I 134). As with the previous visit, Mike stopped the truck in the drive just south of the cattle guard and when Stacey walked up, she was again met by Mr. Rawlins, Sr. (Tr. I 135). Mr. Rawlins, Sr. again told her that

Kenneth was not home. (Tr. I 135) Stacey's back was to the pickup and her front was facing Mr. Rawlins, Sr.. Mr. Rawlins, Sr. was standing between Stacey and the trailer house. Stacey testified at that time she heard Mike say he saw Kenneth Rawlins at the house. Stacey said she turned around and saw Mike standing in front of their pickup. She then turned around and looked at Mr. Rawlins, Sr. and dropped the papers at his feet because he refused to take them. She then told Rawlins, Sr. to tell Kenneth he is now served. (Tr. I 135).

When Stacey dropped the papers, Mr. Rawlins, Sr. told her to pick up the papers accusing Stacey of trespassing and littering. He told Stacey he was going to call the Sheriff. (Tr. I 136, 187). Mike Ayres said he tried to diffuse the situation reminding Rawlins that they were neighbors and that this was just her job. (Tr. I 188). However, Mr. Rawlins, Sr. was still visibly angry, and he followed Stacey as she walked back to the pickup. At this point, Mike noticed petitioner was walking toward them with a shotgun in his hand. (Tr. I 189).

Stacey Ayres kept her focus on Rawlins, Sr., who was following her step-for-step as she walked back to her pickup. Stacey said she could see her son Jacob's feet hanging just below the truck's open passenger door. When Stacey got to the passenger door, Rawlins Sr., reached out and slammed the door shut. At that instant, her husband Mike yelled out a warning: "He's got a gun." (Tr. I 139-40).

Moments after yelling the warning, Mike said the petitioner fired a blast from his shotgun, causing Mike to duck inside the pickup and remove a small pistol kept under the front seat. (Tr. I 191-192). Stacey reacted by yelling to her son Jacob to lock the truck doors, but Rawlins, Sr. grabbed the door before the boy could

4

get it closed. (Tr. I 141, 193). Jacob's father Mike grabbed the door and shut it, then headed back to the driver's side with his wife Stacey following right behind him. (Tr. I 195). Rawlins, Sr. followed Stacey continuing to demand she pick up the papers. (Tr. I 141-43, 195-196). When Mike and Stacey slid back in on the driver's side, Mike tossed the gun back under the seat and put the pickup in reverse. (Tr. I 195).

Mr. Rawlins, Sr. was standing just inside the open driver's door as Mike Ayres slowly started backing up. Mr. Rawlins continued to demand that Stacey 'pick up the papers' and he was banging his body hard against the open door. (Tr. I 141-44, 195-96). Mike said that Rawlins Sr. stayed just inside the driver's door as the pickup traveled backward approximately 50 to 60 feet. (Tr. I 197). Rawlins, Jr. started shooting. A shot hit Jacob.

Stacey testified her son Jacob was tall enough petitioner could see Jacob inside the pickup truck from the place he was standing when he was shooting. (Tr. I 171). Mike Ayres said when the petitioner was firing at them he had a clear unobstructed view into the cab of the pickup. (Tr. I 230). Petitioner appeared to grasp the serious repercussions of firing shots into the Ayres' pickup truck which ultimately resulted in wounding Jacob. When questioned by Sheriff Joe Russell he told the Sheriff several times to shoot him because he deserved it. (Tr. I 241).

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." Case v. Mondagon, 887 F. 2d 1388, 1392 (10th Cir. 1989), cert. denied, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

5

Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court has repeatedly emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." Wright v. West, 505 U.S. 277, 296 (1992) (citing Jackson, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing United States v. Edmondson, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir.), cert. denied, 498 U.S. 904 (1990) (citing United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime. The elements with intent to kill are as follows:

First, intentional and wrongful;
Second, shooting another person with;
Third, the intent to take human life.

OUJI CR 4-4.

On direct appeal the Court of Criminal Appeals held as follows: "Viewed in the light most favorable to the State, a rational trier of fact could have found all the essential elements of Shooting with Intent to Kill in Case No. CF-2003-78 beyond a reasonable doubt and the evidence was sufficient to sustain the conviction." Summary Opinion at 4.

After careful review of the record, this court finds the evidence was sufficient under the standard of Jackson v. Virginia, and the determination by the Oklahoma Court of Criminal Appeals was consistent with federal law. This ground for habeas relief fails.

## II. Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth the two-part test for determining the validity of a habeas petitioner's claim of ineffective assistance of counsel. The test requires a showing that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687.

Petitioner makes three arguments regarding ineffective assistance of trial counsel. The first of these arguments is in regard to the decision of his attorney to not have the Ayres gun tested. Petitioner's argument is based upon the premise the testing of the gun would have been beneficial to his case. The state had possession of the Ayres gun so it was possible for either party to test the gun. It is unknown why defense counsel did not have the Ayres gun tested. It is possible that defense counsel had received word from his client testing would not be beneficial because he was not fired upon. When a conversation with a defendant gives counsel reason to believe the investigation or another line of defense would be fruitless or even harmful,

7

counsel's decision not to pursue this investigation may not be later challenged as unreasonable. Strickland, 466 U.S. at 691. Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Pickens v. Gibson, 206 F.3d 988, 1001 (10th Cir. 2000). Petitioner failed to overcome this presumption. Without testing, petitioner was free to make the argument he was fired upon first. Petitioner offers only speculation the test result would have been beneficial. Speculation is insufficient to sustain a habeas claim. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). In order to be successful on a claim for ineffective assistance of trial counsel petitioner must show counsel's performance was deficient and actual prejudice. Petitioner has failed to establish either of these prongs. Accordingly, this proposition must fail.

The second and third arguments petitioner advances regarding ineffective assistance of trial counsel is the failure of his counsel to object to certain remarks which he claims constitute prosecutorial misconduct or remarks which he classifies as unduly prejudicial evidence. His first example of such an occurrence was when former Sheriff Abel said in his testimony the modified shotgun the petitioner fired was made "for killing people". (Tr. II 377). The answer was given to clarify the prior answer, in which Abel described the shotgun as an "anti-personnel type firearm". (Tr. II 376). Due to the nature of the weapon, this was not inaccurate and no objection was warranted. Error does not occur upon trial counsel's failure to object when there is no valid basis. Martin v. Kaiser, 907 F.2d 931, 936 (10th Cir. 1990).

The second statement from witness Abel was his reference to the fact the witness was a former Sheriff and that the state's attorney was a former District Judge. (Tr. II 374).

The jurors were instructed to decide the case based only on the evidence presented, not on the prior jobs of the attorneys or witnesses. Unless there is specific evidence to the contrary, it will be presumed that jurors followed instructions. Hale v. Gibson, 227 F.3d 1298, 1325 (10th Cir. 2000).

Finally, petitioner argues with his attorney's failure to object to the testimony of Mike Ayres when he testified that he believed the petitioner would have shot at him had he chosen to go around the front of the truck. (Tr. II 228). Mr. Ayres' explanation of his choice regarding his movements during this incident were highly relevant. The jury was free to believe or disbelieve the witness based on the instructions they were given.

In regard to the ineffective assistance of counsel claim the Oklahoma Court of Criminal Appeals rejected the entire argument stating:

> Here, evidence overwhelmingly showed that Appellant fired at all three victims at close range, with an assault weapon, as they were attempting to leave the Rawlin's property. Appellant has not shown that, but for counsel's errors, the outcome of the proceeding would have been different. Summary Opinion at 4.

Petitioner has simply failed to establish either prong of the Strickland standard with any of his arguments. The Oklahoma Court of Criminal Appeals denied petitioner's relief on this claim in a reasonable manner. Accordingly, petitioner's claim regarding ineffective assistance of counsel must be denied.

## III. Prosecutorial Misconduct

In petitioner's next ground for relief, he claims the Oklahoma Court of Criminal Appeals erred in denying his request for relief regarding several claims of prosecutorial misconduct. In examining habeas claims of prosecutorial misconduct, "it 'is not enough that the prosecutor['s] remarks were undesirable or even universally condemned.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Darden v. Wainwright, 699 F.2d 1031, 1036 (11th Cir. 1983)). Instead, "[t]he relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Petitioner's arguments on this claim are broken into several parts. First, petitioner argues some of the prosecutors comments were designed to inflame the jury. The first such comment, however, drew an objection from his attorney which was sustained. The trial court then admonished the jury to disregard the comment. (Tr. III 513). The Supreme Court has held that when a jury is cautioned to disregard certain information by the trial court, the jury is presumed to follow cautionary instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Petitioner cites two other comments of the prosecutor. The first comment references a picture which shows fragments of skull left in the truck seat and references the seriousness of the injury. If sympathy accrued, it was in the course of proving the elements of intent and the serious nature of the injury to Jacob Ayres. The second comment regarding the serious injuries suffered by the child victim were not

10

unreasonable.

Petitioner then argues that misconduct occurred when the prosecutor made statements aligning himself with the victims. The comments petitioner complained of were as follows "...do justice for Jacob, Stacey and Michael Ayres, simply do justice for what they did to that family and find them guilty." (Tr. III 514). "I'm going to ask you to return the verdict that truth and justice demands. I'm here today to ask for justice for the Ayres family." (Tr. III 536). "Ladies and gentlemen, on behalf of Mr. Brown, myself, the State of Oklahoma, and the entire Ayres' family. We appreciate your service for the last three days..." (Tr. III 557). "...and whatever you do to these fellows they'll do it, but the crime that they've committed, ladies and gentleman, the crime against Mike Stacey and Jacob Ayres is forever there, do justice for them." (Tr. III 562).

Comments have to be shown to be an unfair comment on the evidence presented and it must be established that it is reasonably evident the remarks might have influenced the jury to reach a more severe verdict of guilt. Darden v. Wainwright, 477 U.S. 168, 181 (1986). It could hardly have been a revelation to the jurors the prosecutor was supporting the victims in pressing the criminal case. Given the State's burden of proof and the overall jury instructions at trial, there is no reasonable chance the jury would have ignored the evidence and rendered a verdict based on their "feelings".

The final argument is that certain comments made by the prosecutor constituted improper vouching for witnesses. The first comment was "Joe Russell, Gary Watson, Kevin McIntire, Ronald Jones and Paul Abel are all people that are going to be back testifying in court again some day. It's important for

11

them to have a reputation of being a truth teller." (Tr. III 527). Telling the jury that these witnesses' reputation is important and that lying in court would have consequences is a true statement and it does not indicate they are infallible or presumed truthful. The comments are fair and reasonable.

The final statement of alleged vouching is a partial sentence. Petitioner attributes the alleged vouching to this statement from the prosecutor: "I would submit to you very honest terms their recollection of events." (Tr. III 558). Petitioner took the last few words of a lengthy sentence which reads as follows: "Well, ladies and gentleman, you heard the 911 tape made moments after the shooting during which time Mike and Stacey Ayres each were on the phone and what they disclosed to the dispatcher is very emotional and thereby I would submit to you very honest terms of their recollection of events." (Tr. III 558). That statements are generally more truthful when they are given during an emotional incident is a fair comment.

This issue of prosecutorial misconduct was raised on direct appeal and the Oklahoma Court of Criminal Appeals found the argument to be without merit. Summary Opinion at 5. The court explained their rejection of the claim as follows: "Although some misconduct occurred, in the context of the entire trial and in consideration of all the evidence and the testimony of the witnesses, we cannot find the prosecutor's improper comments so infected the trial with unfairness as to make the resulting conviction a denial or due process." Summary Opinion at 5. After a careful review of the record, the court finds the decision by the Oklahoma Court of Criminal Appeals was not contrary to or an unreasonable application of federal law, and its decision was not based on an unreasonable

12

determination of the facts. Accordingly, habeas relief is not warranted.

## IV. State Law Issues

Petitioner's fourth ground for relief deals with inadmissible hearsay. His fifth ground of relief is whether the trial court erred in making certain comments to the jury regarding their sentencing duties. Both claims were rejected by the Oklahoma Court of Criminal Appeals.

Petitioner's fourth claim is that certain statements attributed to the petitioner's father were hearsay statements that had been improperly admitted. State evidentiary determinations ordinarily do not present federal constitutional issues. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1995) (per curium)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." Beeler v. Crouse, 332 F.2d 783, 783 (10th Cir. 1964) (citing Teague v. Looney, 268 F.2d 506 (10th Cir. 1959)). Failure to present a federal constitutional issue is a fatal flaw in habeas corpus proceedings. Tapia v. Tansy, 926 F.2d 1554, 1556 (10th Cir. 1991). The court has reviewed the statements at issue and agrees with the Oklahoma Court of Criminal Appeals that the "statement's attributed to the Appellant's father did not ultimately affect the outcome of the trial and

13

any error in their admission was harmless beyond a reasonable doubt." This court finds the state court's conclusion was not unreasonable. Here the court finds petitioner has failed to present an argument supporting federal habeas relief in relation to ground four.

In Petitioner's fifth ground for relief, he submits the trial judge's revelation of the fact that under Oklahoma law, the judge would determine the sentence if the jury was unable to reach a unanimous decision, caused the jury to recommend an excessive sentence of twenty-five years imprisonment. The issue was raised in direct appeal, and the Oklahoma Court of Criminal Appeals found the argument did not warrant reversal of the conviction or modification of the sentence. This argument does not set forth a cognizable federal claim either. The issue of sentencing is one which is not cognizable in this federal habeas corpus proceeding. "...federal habeas relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991). Accordingly for the reasons set forth, these two grounds for relief should be denied.

### V. Cumulative Error

Petitioner's final ground for relief is he claims the Oklahoma Court of Criminal Appeals erred in finding the cumulative effect of the alleged errors did not warrant reversal of the conviction. Petitioner has failed to establish under state law, as well as under federal law, that he is entitled to federal habeas relief on any claim. Thus, there is no accumulation of state trial error. Accordingly, habeas relief is not warranted on this claim.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus is **DENIED**, and this action is, in all respects, **DISMISSED**.

**DATED** this 14th day of October 2008.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma